## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No. 05 - 22968

ROXANA MARIA BORCEA, CIPRAN CIURARU,
TIHOMIR DANCHEV, ATUL KANADE,
individually, and on behalf of all others similarly situated

KLEIN

Plaintiffs,

COMPLAINT -
CLASS ACTION

-vs-

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINES, INC.

Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs, ROXANA MARIA BORCEA, CIPRAN CIURARU, TIHOMIR DANCHEV,

ATUL KANADE, individually and on behalf of all others similarly situated, bring this action against

Carnival Corporation d/b/a Carnival Cruise Lines, Inc. ("Carnival") for violating the employment

agreement and the Seaman's Wage Act, 46 U.S.C. § 10313(f) & (g), and file this Class Action

Complaint. As alleged below, Carnival failed to pay Plaintiffs, and the putative class members,

overtime to which they are entitled, and Plaintiffs have not been paid those wages upon their

discharge from Carnival's vessels in a U.S. port or harbor. As grounds for their action, Plaintiffs

allege:

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.371.1800 Fax 305.372.3508

## PARTIES

**Plaintiffs**

1.  Plaintiffs are non-tip earning seafarer-employees whose terms of employment are not governed by the Phillipine Overseas Employment Administration ("P.O.E.A.") and who are currently working and/or have worked aboard one or more of Defendant Carnival's vessels. Plaintiffs have been discharged from their respective vessels upon which they are or were employed at the termination of voyages in U.S. ports or harbors and have not been paid their full wages owed by Defendant.

2.  Plaintiff ROXANA MARIA BORCEA ("BORCEA") is a Romanian seaman who worked as a non-tip earning employee for Defendant Carnival.  Plaintiff BORCEA worked aboard the Bahamian flagged vessel M/S Fascination as a cook. She signed-off the M/S Fascination on September 7, 2004, in Miami, Florida.

3.  Plaintiff CIPRIAN CIURARU ("CIURARU") is a Romanian seaman who worked as a non-tip earning employee for Defendant Carnival.  Plaintiff CIURARU worked aboard the Bahamian flagged vessel M/S Fascination as a cook.  She signed-off the M/S Fascination on September 2, 2004, in Miami, Florida.

4.  Plaintiff TIHOMIR DANCHEV ("DANCHEV") is a Bulgarian seaman who worked as a non-tip earning employee for Defendant Carnival. Plaintiff DANCHEV worked aboard the

Bahamian flagged vessel M/S Fascination as a trainee cook  He signed-off the M/S Fascination on September 11, 2004, in Miami, Florida.

5.     Plaintiff ATUL KANADE ("KANADE ") is an Indian seaman who worked as a non-tip earning employee for Defendant Carnival.   Plaintiff KANADE worked aboard the CARNIVAL vessels, M/S INSPIRATION, M/S ELATION, M/S DESTINY, M/S SENSATION, M/S TRIUMPH, M/S JUBILEE and M/S CELEBRATION as a cook. He signed-off the M/S Celebration on May 2005, in Jacksonville, Florida.

6.     Plaintiffs, and the putative class, regularly work in excess of 70 hours per week as required by the assigned duties and tasks given to them by their superiors and have not been paid extra overtime wages for which they are entitled upon their discharge from Carnival's vessels in a U.S. port or harbor.

**Defendant Carnival**

7.     Defendant Carnival is a corporation organized and existing under the laws of Panama, with its principal executive office located at 3655 N.W. 87th Ave Miami, Florida. At all times material hereto, Carnival was Plaintiffs' employer and owner and operator of the vessels on which Plaintiffs were employed.

8.     Carnival is the largest cruise company and one of the largest vacation companies in the world. Carnival is a global cruise and vacation company that offers cruises to all major destinations outside the Far East. Carnival primarily serves vacation markets in North America, the United Kingdom, Germany, Southern Europe and South America. The

Company's portfolio of cruise brands includes, among others, Carnival Cruise Lines, Princess Cruises and Holland America Line. Carnival's common stock is traded on the New York Stock Exchange under the ticker symbol CCL. Carnival Cruise Lines carries the largest number of North American cruise passengers, with a vast majority of those passengers being from the United States.

9.      Carnival has a fleet of approximately twenty ships leaving from various ports of call in the United States including Miami, Ft. Lauderdale, Tampa, and Port Canaveral in Florida.

13. Thirteen of Carnival's ships are registered in Panama: (1) Carnival Valor; (2) Carnival Miracle; (3) Carnival Glory; (4) Carnival Conquest; (5) Carnival Pride; (6) Carnival Spirit; (7) Carnival Victory; (8) Celebration; (9) Elation; (10) Ecstasy; (11) Fantasy; (12)Legend; and (13)Paradise.  These vessels will hereinafter be referred to as the "Panamanian Flagged Vessels."

10.     Seven of Carnival's ships are registered in the Bahamas: (1) Carnival Triumph; (2) Carnival Destiny; (3) Fascination; (4) Holiday; (5) Imagination; (6) Inspiration; and (7)Sensation. These vessels will be hereinafter referred to as the "Bahamian Flagged Vessels."

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 46 U.S.C. § 10313(f) & (g), admiralty and maritime jurisdiction under 28 U.S.C. § 1333, and federal question jurisdiction pursuant to 28 U.S.C. § 1331.

12.   This Court has personal jurisdiction over the Defendant and venue is proper in the Southern District of Florida because many of the Defendant's acts and transactions constituting violations of the Seaman's Wage Act occurred in the Southern District of Florida. Moreover, Defendant, at all times material to the allegations contained in this Complaint, personally and through an agent, operated vessels in the waters of this state and district and also:

a.   personally and through an agent operated, conducted, engaged in and carried on a business venture in the Southern District of Florida or had an office or agency in the Southern District of Florida; and/or

b.   personally or through an agent engaged in substantial activity within this state and district.

c.   Operated vessels in the waters of this district, state, and/or county; and/or

d.   The acts of the Defendant set out in this Complaint occurred in whole or in part in this county, state, and/or district.

13.   Venue is also proper in this district pursuant to 28 U.S.C. § 139 1(c) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Southern District of Florida and, as set forth in the preceding paragraph, Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

14.   The terms and conditions of Plaintiffs' employment with Defendant Carnival are contained in "Seafarer's Agreement" samples of which are attached as Composite Exhibit A.

15.   Under a Seafarer's Agreement, a "week of work" consists of "42 hours base time and 28 hours overtime," for a total of 70 hours per week. Any hours worked in excess of 70 per week are considered "extra overtime" hours.

16.   The Seafarer's Agreement attempts to differentiate between "any Seafarer who may receive gratuities or tips from passengers or other Seafarers" (hereinafter referred to as "tip earners") and those Seafarers who do not receive gratuities or tips from passengers or other Seafarers (hereinafter referred to as "non-tip earners").

17.   Pursuant to the Seafarer's Agreement, non-tip earners are entitled to "extra overtime" pay for any hours worked in excess of 70 hours per week.

18.   Throughout the period of time Plaintiffs have been employed by Defendant, Plaintiffs, non-tip earning employees, have regularly worked in excess of 70 hours per week as required by the assigned duties and tasks given to them by their superiors and have not been paid extra overtime wages upon their discharge from Defendant's vessels in a U. S. port or harbor.

19.   Defendant has engaged in a widespread pattern or practice of requiring Plaintiffs and other seafarer-employees to work extra overtime hours. The acts establishing this pattern or practice include:

    i.   Requiring seafarer-employees to report to and prepare their respective assigned areas of work earlier than their scheduled hours of work.

    ii.   Requiring seafarer-employees to remain in their respective assigned areas of work past their scheduled hours of work.

    iii.     Requiring seafarer-employees to perform additional tasks and/or duties as "side jobs".

    iv.     Requiring seafarer-employees to regularly attend meetings either before or after their scheduled hours of work.

20.    Although Defendant has a time record keeping system, which purportedly records the time worked by Plaintiffs and other seafarer-employees, the Defendant manipulates the records so that they do not accurately reflect the number of hours being worked. Defendant has adopted and/or acquiesced in a widespread pattern or practice of manipulating time records to exist that prevent accurate record keeping. The acts establishing this pattern or practice include:

    i.     Requiring seafarer-employees to clock out and continue working to keep the hours of work clocked in by such employees less than 70 hours per week.

    ii.     Deleting the number of hours of work clocked in by seafarer-employees in excess of 70 hours from the seafarer-employees' time records.

    iii.     Not allowing seafarer-employees to clock in their time for hours spent performing additional work-related activities.

21.    All conditions precedent for Plaintiffs' claims are satisfied, have been performed or have occurred.

## CLASS ALLEGATIONS

22.     Plaintiffs bring this action as a class action against Defendant pursuant to Rule 23(a) and

(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others

similarly situated. The Class is defined as:

> All former and current, non-P.O.E.A. and non-tip earning seafarer-employees, who have worked or are working for and aboard various ships owned by Defendant Carnival and have not or are not being paid, upon their discharge from their respective vessels upon which they are/were employed at the termination of voyages in U.S. ports or harbors, their extra overtime compensation and/or minimum wages for all hours worked aboard Defendant Carnival's vessels. Excluded from the Class are (a) Defendant, and its officers and directors, and (b) the immediate family members of Defendant's officers and directors.

**Numerosity**

23.     The members of the Class are so numerous and geographically dispersed throughout the

United States and abroad that joinder of all Class members is impracticable. The Class, upon

information and belief, consists of at least fifteen thousand (15,000) seafarers, whose payroll

records, work time records, and work schedules are maintained by Defendant. The Defendant

has, or should have, detailed records of the purported overtime hours Plaintiffs' worked. The

precise number of Class members can only be obtained through discovery. Plaintiff does not

anticipate any difficulties in the management of the action as a class action.

**Commonality**

24.    There are questions of law and fact that are common to the claims of Plaintiffs and the entire

Class. Among these common questions are the following:

a.    Whether the Defendant has breached the seafarer's agreement.

b.    Whether the Defendant has engaged in a pattern or practice of requiring uncompensated extra overtime.

c.    Whether the Defendant failed to pay the seaman their wages for overtime hours worked in excess of 70 hours per week aboard the vessels upon which they were assigned to work and which were owned by Carnival.

d.    Whether the Defendant's failure to pay the seaman their wages for overtime hours worked in excess of 70 hours per week aboard the vessels upon which they were assigned to work and which were owned by Defendant was made without sufficient cause.

e.    Whether the seamen are entitled to penalty wages under 46 U.S.C. §10313(g).

**Typicality**

25.    Plaintiffs' claims are typical of the claims of the Class in that each seaman is claiming earned

wages and penalty wages due to Defendant's failure to pay them for extra overtime hours

worked in excess of 70 hours per week aboard Defendant's vessels in violation of the

Seafarer's Agreement and federal statutory law, and each class member has sustained

damages as a result of Defendant's actions.

26.    Upon information and belief, there has never been a prior lawsuit certified as a class on behalf of Plaintiffs, the Class, or either of the two sub-classes.

**Adequacy of Representation**

27.    Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them. There is no hostility between Plaintiffs and the unnamed Class members. Plaintiffs anticipate no difficulty in the management of this litigation as a Class action.

28.    To prosecute this case, Plaintiffs have chosen the law firms Kozyak, Tropin & Throckmorton, P.A., Julio J. Ayala, P.A., Crewmember and Maritime Advocacy Center, P.A., and Downs, Brill, Whitehead & Sage - law firms with vast experience in maritime litigation and class action litigation.  The law firms have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**Requirements of Fed. R. Civ. P. 23(b)(3)**

**i. Predominance**

29.    The questions of law or fact common to the claims of Plaintiffs and of each Class member predominate over any questions of law or fact affecting only individual members of the class. All claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" failure to pay "extra overtime" as required by the seafarer's agreement, upon discharge in a U.S. port or harbor.

30.    Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there are some individualized damages.

31.    As a result, when determining whether common questions predominate, courts focus on the liability issue and if the liability issue is common to the class as in the case at bar, common questions are held to predominate over individual questions.

32.    Since all claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" failure to pay "extra overtime" as required by the seafarer's agreement, upon discharge in a U.S. port or harbor, the predominance requirement of Fed.R.Civ.P. 23(b)(3) is satisfied.

**ii. Superiority**

33.    A class action is superior to thousands of individual actions in part because of the non-exhaustive factors listed below:

      a.    Joinder of all Class members would create extreme hardship and inconvenience for the affected seafarers because of their immense geographical dispersion. Class members reside in the United States, Central and South America, Europe, Asia, India and Africa.

      b.    It is highly unlikely that individual plaintiffs would shoulder the burden of this vast and complex litigation as many are simply too poor or ignorant to bring separate actions.

      c.    There are no known individual Class members who are interested in individually controlling the prosecution of separate actions.

      d.    The interests of justice will be well served by resolving the common disputes of potential Class members in one forum.

e.   Individual suits would not be cost effective, especially in light of the fact that many of the Class members are foreign nationals.

f.   A class action is a superior method of seeking relief because certain members of the class fear retaliation from Defendant with respect to their present employment.

g.   The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

34.   Federal courts have already determined that in wage claim suits under 46 U.S.C. §.103 13 involving many potential plaintiffs as in the case at bar, "the class action [pursuant to Fed.R.Civ.P. 23(b)(3)] is not simply the 'superior' means of resolving the dispute fairly and efficiently but the only means of doing so."

## COUNT I
### Failure to Pay "Excess Overtime" Wages in Breach of the Seafarer's Agreement

35.   Plaintiffs reallege and incorporate by reference paragraphs 1 - 35 of this complaint.

36.   Plaintiffs BORCEA, CIURARU, DANCHEV, and KANADE were employed at various times aboard several of Defendants' vessels, as member of the crew thereof and fully performed their duties as crew members and accrued earned wages payable pursuant to the seafarer's agreement.

37.   Article 3 (C) of the Seafarer's Agreement, which relates to the payment of "extra overtime" provides as follows:

> This subparagraph 3 (C) does not apply to any Seafarer who may receive gratuities or tips from passengers or other Seafarers. Subject to this exception, extra overtime is time worked in excess of 70 hours per week according to Cruise Line's records. Seafarer shall be paid $

_____ USD per hour for extra overtime worked, but it is understood and agreed Seafarer has no entitlement or right to work or to be assigned to work extra overtime, which is assigned at the discretion of CCL on an "as needed" basis.

38.    As such, pursuant to the Seafarer's Agreement, Defendant Carnival is obligated to pay Plaintiffs and the class "extra overtime" pay for any hours worked in excess of 70 hours per week.

39.    These extra overtime wages are not compensated by Defendant's consolidated wage scheme.

40.    Upon information and belief, the Defendant, in breach of its Seafarer's Agreement, the common law, U.S. statutory law, and general maritime law, and notwithstanding its obligations to its employees, failed to make payment of the full wages due to said Plaintiffs and class members, but rather has retained these funds for itself.

41.    Defendant Carnival has a corporate wide strategy of avoiding the payment of any and all excess hours due to the Plaintiffs and the class.

42.    Although Defendant has a time record keeping system, which purportedly records the time worked by Plaintiffs and other seafarer-employees, the Defendant manipulates the records so that they do not accurately reflect the number of hours being worked. Defendant has adopted and/or acquiesced in a widespread pattern or practice of manipulating time records to exist that prevent accurate record keeping. The acts establishing this pattern or practice include:

i.    Requiring seafarer-employees to clock out and continue working to keep the hours of work clocked in by such employees less than 70 hours per week.

ii.    Deleting the number of hours of work clocked in by seafarer-employees in excess of 70 hours from the seafarer-employees' time records.

iii.   Not allowing seafarer-employees to clock in their time for hours spent performing additional work-related activities.

43.    As a direct and proximate result of Defendant's breach of the Seafarer's Agreement, Plaintiffs BORCEA, CIURARU, DANCHEV, and KANADE have suffered pecuniary losses.

44.    Defendant has neglected and refused, and still neglects and refuses, without sufficient cause, to pay Plaintiffs and the class for the excess hours worked aboard the Defendant's vessels. By reason of the foregoing, the Defendant has breached the Seafarer's Agreement, and as a direct and proximate result Plaintiffs have been deprived their lawful wages and suffered damage.

## COUNT II
### Failure to Pay Wages
### Under the Seaman's Wage Act, 46 U.S.C. § 10313

45.    Plaintiffs reallege and incorporate by reference paragraphs 1 - 44 of this Complaint.

46.    Defendant has neglected and refused, and still neglects and refuses, without sufficient cause, to compensate Plaintiffs and the Class for extra overtime hours worked in excess of 70 hours per week and/or minimum wages upon Plaintiffs discharge from Defendant's vessels in a U. S. port or harbor.

47.    By reason of the foregoing, the Defendants, directly and indirectly, have violated 46 U.S.C. § 10313(f), and Plaintiffs and the Class have suffered damages thereby.

48.    Pursuant 46 U.S.C. § 10313(g), when payment is not made as provided under 46 U.S.C. § 10313(f) without sufficient cause, the master or owner shall pay to the seaman 2 days wages for each day payment is delayed.

49.    As a result of Defendant's conduct, Plaintiffs and the Class are entitled to an award of all wages due for hours worked in excess of 70 hours as extra overtime and/or minimum wages, interest on the unpaid amounts until the date of judgment, and all amounts due Plaintiffs as penalties under applicable provisions of the 46 U.S.C. §10313(g).

## RELIEF REQUESTED

**WHEREFORE,** Plaintiffs, on their own behalf and on behalf of the Class, respectfully request that this Court:

A.    Certify this action as a class action under Federal Rule of Civil Procedure 23.

B.    Declare that the Defendant has engaged in a pattern and/or practice of refusing to pay the Plaintiffs and the Class the wages to which they are entitled pursuant to the Seafarer's Agreement and U.S. law, and enjoining the Defendant from further engaging in such a pattern and/or practice.

C.    Award Plaintiffs and the Class damages for unpaid extra overtime compensation, including pre-judgment interest on these amounts.

D.    Award Plaintiffs and the Class their attorneys fees, costs and expenses.

E.    Award Plaintiffs and the Class such further relief as is appropriate in the interests of justice.

## DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial on any and all counts for which a trial by jury is permitted.

Dated this 16th day of November, 2005.

Respectfully Submitted,

Julio Ayala, Esq.
CREWMEMBER AND MARITIME
ADVOCACY CENTER
169 E. Flagler Street
Suite 1620
Miami, Florida 33131
(305) 374-9099
(305) 374-5099 - Fax

KOZYAK TROPIN & THROCKMORTON,
P.A.
*Attorneys for the Plaintiff*
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
(305) 372-1800

By: _____
    Thomas A. Tucker Ronzetti, Esq.
    Florida Bar No.: 965723
    Christopher F. Branch, Esq.
    Florida Bar No.: 941751

David W. Brill, Esq.
DOWNS BRILL WHITEHEAD & SAGE
Mercantile Bank Building
One Southwest 129th Avenue, Suite 305
Pembroke Pines, Florida 33027
(954) 447-3556
(954) 447-3557 - Fax

259817.1

# SEAFARER'S AGREEMENT

The Application having been submitted by "Seafarer" to Carnival Corporation ("Cruise Line"), or its manning agent, and Cruise Line or its manning agent having considered said Application, this Seafarer's Agreement is hereby entered by and between Cruise Line and "Seafarer," pursuant to the following terms and conditions:

1. The Seafarer,  **ATUL SURYAKANT KANADE,   CREW # 229869**

agrees to work in the position of  **COOK**

aboard a ship within the fleet of the Cruise Line.

2. This Seafarer's Agreement shall be effective from the date of execution and in no circumstance shall the term exceed 10 calendar months. Notwithstanding any other provision contained herein, this Seafarer's Agreement is terminable immediately at the will of either Cruise Line or the Seafarer upon delivery of written notice of termination. If Seafarer elects to terminate, written notice shall be delivered by hand to his or her immediate supervisor. If Cruise Line elects to terminate, written notice shall be delivered by hand directly to Seafarer, unless Seafarer is not aboard ship, in which event, notice may be sent by mail to Seafarer's last known address or otherwise hand-delivered to Seafarer.

3. (a) Seafarer's right to receive any wage is conditioned upon his or her actual signing of Ship's Articles which shall be for voyages prescribed in the ship's log.

(b) Seafarer shall be paid the wage of $      **201.9234**      (U.S.) for each week of work, including overtime. (This equates to an approximate daily rate of $      **28.8462**      U.S.) A week of work is always calculated from Sunday to Saturday, consisting of 42 hours base time and 28 hours overtime, whether overtime is worked or not worked.

(c) This sub-paragraph 3.(c) does not apply to any Seafarer who may receive gratuities or tips from passengers or other Seafarers. Subject to this exception, extra overtime is time worked in excess of 70 hours per week according to Cruise Line's records. Seafarer shall be paid $      **3.8831**      (U.S.) per hour for extra overtime worked, but it is understood and agreed Seafarer has no entitlement or right to work or to be assigned to work extra overtime, which is assigned at the discretion of Cruise Line on an "as needed" basis.

(d) Cruise Line makes no promise, guarantee or commitment, and Seafarer agrees he/she does not expect or anticipate payment by Cruise Line, of any gratuity or tip compensation as wages under any circumstances. In the event a Seafarer who may receive tips by virtue of his/her position works under this Agreement during a period when the ship is out of regular service for any reason, such as in dry-dock, during a trans-oceanic crossing or involved in inaugural functions, or the Seafarer is working but is not aboard ship, he/she is to be paid at the rate of $ **N/A**      for each week of work. All provisions of sub-paragraph 3.(b) above, except those contained in the first sentence, will still apply with full force and effect.

(e) If Seafarer becomes ill or injured, his/her entitlement to un-earned wages shall extend only to the end of the voyage from which Seafarer signs off articles.

(f) Vacation pay accrues at the rate of one day's vacation pay for every 11 days actually worked by Seafarer. It is understood and agreed vacation pay does not accrue on extra overtime.

4.  Seafarer agrees and acknowledges he/she is required to comply with and abide, at all times, ship's articles; all rules, regulations and standards set forth in the Manual (a current copy of which is attached hereto and made a part hereof); as well as, all other oral and written rules, regulations and standards of Cruise Line and of the vessel to which he/she is assigned.

5.  On arrival to work, Seafarer may be required to deposit with Cruise Line U.S. money in an amount to be determined by Cruise Line equal to the cost of an open return ticket from the home port of the vessel to which he/she is assigned to his/her country of origin, or, such a ticket itself valid for one year with no restrictions.

6.  This Seafarer's Agreement and Ship's Articles, is the sole and entire agreement of the parties. There are no prior or present agreements, representations or understandings, oral or written, which are binding upon either party, unless expressly included in this Seafarer's Agreement. No modification or change of this Seafarer's Agreement shall be valid or binding upon the parties unless in writing and executed by the party or parties intended to be bound by it.

7.  The terms and conditions of this Seafarer's Agreement are severable. If any clause of this contract is determined to be void or otherwise unenforceable by any court or tribunal of competent jurisdiction, then the remainder of this Agreement shall stand in full force and effect.

*The undersigned Seafarer has read, understands and accepts the terms and conditions of employment as contained and incorporated herein. Thus, the Application for employment having been accepted by Cruise Line and the terms and conditions of employment having been agreed by and between both the Seafarer and Cruise Line, the undersigned hereby enter into this Seafarer's Agreement this* _____ ,

_____          By: _____
Seafarer                                      Representative, Cruise Line
**ATUL SURYAKANT KANADE**

Version 12/95.

# SEAFARER'S AGREEMENT

The Application having been submitted by "Seafarer" to Carnival Corporation ("Cruise Line"), or its manning agent, and Cruise Line or its manning agent having considered said Application, this Seafarer's Agreement is hereby entered by and between Cruise Line and "Seafarer," pursuant to the following terms and conditions:

1. The Seafarer, **ATUL SURYAKANT KANADE, CREW # 229869**

agrees to work in the position of **COOK**

aboard a ship within the fleet of the Cruise Line.

2. This Seafarer's Agreement shall be effective from the date of execution and in no circumstance shall the term exceed 10 calendar months. Notwithstanding any other provision contained herein, this Seafarer's Agreement is terminable immediately at the will of either Cruise Line or the Seafarer upon delivery of written notice of termination. If Seafarer elects to terminate, written notice shall be delivered by hand to his or her immediate supervisor. If Cruise Line elects to terminate, written notice shall be delivered by hand directly to Seafarer, unless Seafarer is not aboard ship, in which event, notice may be sent by mail to Seafarer's last known address or otherwise hand-delivered to Seafarer.

3. (a) Seafarer's right to receive any wage is conditioned upon his or her actual signing of Ship's Articles which shall be for voyages prescribed in the ship's log.

(b) Seafarer shall be paid the wage of $    **201.9234**    (U.S.) for each week of work, including overtime. (This equates to an approximate daily rate of $    **28.8462**    U.S.) A week of work is always calculated from Sunday to Saturday, consisting of 42 hours base time and 28 hours overtime, whether overtime is worked or not worked.

(c) This sub-paragraph 3.(c) does not apply to any Seafarer who may receive gratuities or tips from passengers or other Seafarers. Subject to this exception, extra overtime is time worked in excess of 70 hours per week according to Cruise Line's records. Seafarer shall be paid $    **3.8831**    (U.S.) per hour for extra overtime worked, but it is understood and agreed Seafarer has no entitlement or right to work or to be assigned to work extra overtime, which is assigned at the discretion of Cruise Line on an "as needed" basis.

(d) Cruise Line makes no promise, guarantee or commitment, and Seafarer agrees he/she does not expect or anticipate payment by Cruise Line, of any gratuity or tip compensation as wages under any circumstances. In the event a Seafarer who may receive tips by virtue of his/her position works under this Agreement during a period when the ship is out of regular service for any reason, such as in dry-dock, during a trans-oceanic crossing or involved in inaugural functions, or the Seafarer is working but is not aboard ship, he/she is to be paid at the rate of $ **N/A**    for each week of work. All provisions of sub-paragraph 3.(b) above, except those contained in the first sentence, will still apply with full force and effect.

(e) If Seafarer becomes ill or injured, his/her entitlement to un-earned wages shall extend only to the end of the voyage from which Seafarer signs off articles.

(f) Vacation pay accrues at the rate of one day's vacation pay for every 11 days actually worked by Seafarer. It is understood and agreed vacation pay does not accrue on extra overtime.

4.  Seafarer agrees and acknowledges he/she is required to comply with and abide, at all times, ship's articles; all rules, regulations and standards set forth in the Manual (a current copy of which is attached hereto and made a part hereof); as well as, all other oral and written rules, regulations and standards of Cruise Line and of the vessel to which he/she is assigned.

5.  On arrival to work, Seafarer may be required to deposit with Cruise Line U.S. money in an amount to be determined by Cruise Line equal to the cost of an open return ticket from the home port of the vessel to which he/she is assigned to his/her country of origin, or, such a ticket itself valid for one year with no restrictions.

6.  This Seafarer's Agreement and Ship's Articles, is the sole and entire agreement of the parties. There are no prior or present agreements, representations or understandings, oral or written, which are binding upon either party, unless expressly included in this Seafarer's Agreement. No modification or change of this Seafarer's Agreement shall be valid or binding upon the parties unless in writing and executed by the party or parties intended to be bound by it.

7.  The terms and conditions of this Seafarer's Agreement are severable. If any clause of this contract is determined to be void or otherwise unenforceable by any court or tribunal of competent jurisdiction, then the remainder of this Agreement shall stand in full force and effect.

*The undersigned Seafarer has read, understands and accepts the terms and conditions of employment as contained and incorporated herein. Thus, the Application for employment having been accepted by Cruise Line and the terms and conditions of employment having been agreed by and between both the Seafarer and Cruise Line, the undersigned hereby enter into this Seafarer's Agreement this _____ day of _____*

_____
Seafarer
**ATUL SURYAKANT KANADE**

By:_____
Representative, Cruise Line

Version 12/95.

# SEAFARER'S AGREEMENT

The Application having been submitted by "Seafarer" to Carnival Corporation ("Cruise Line"), or its manning agent, and Cruise Line or its manning agent having considered said Application, this Seafarer's Agreement is hereby entered by and between Cruise Line and "Seafarer," pursuant to the following terms and conditions:

1. The Seafarer, **ATUL SURYAKANT KANADE,   CREW # 229869**

agrees to work in the position of  **DEMI CHEF DE PARTIE**

aboard a ship within the fleet of the Cruise Line.

2. This Seafarer's Agreement shall be effective from the date of execution and in no circumstance shall the term exceed 10 calendar months. Notwithstanding any other provision contained herein, this Seafarer's Agreement is terminable immediately at the will of either Cruise Line or the Seafarer upon delivery of written notice of termination. If Seafarer elects to terminate, written notice shall be delivered by hand to his or her immediate supervisor. If Cruise Line elects to terminate, written notice shall be delivered by hand directly to Seafarer, unless Seafarer is not aboard ship, in which event, notice may be sent by mail to Seafarer's last known address or otherwise hand-delivered to Seafarer.

3. (a) Seafarer's right to receive any wage is conditioned upon his or her actual signing of Ship's Articles which shall be for voyages prescribed in the ship's log.

(b) Seafarer shall be paid the wage of $      207.6921      (U.S.) for each week of work, including overtime. (This equates to an approximate daily rate of $      29.6703      U.S.) A week of work is always calculated from Sunday to Saturday, consisting of 42 hours base time and 28 hours overtime, whether overtime is worked or not worked.

(c) This sub-paragraph 3.(c) does not apply to any Seafarer who may receive gratuities or tips from passengers or other Seafarers. Subject to this exception, extra overtime is time worked in excess of 70 hours per week according to Cruise Line's records. Seafarer shall be paid $      3.9941      (U.S.) per hour for extra overtime worked, but it is understood and agreed Seafarer has no entitlement or right to work or to be assigned to work extra overtime, which is assigned at the discretion of Cruise Line on an "as needed" basis.

(d) Cruise Line makes no promise, guarantee or commitment, and Seafarer agrees he/she does not expect or anticipate payment by Cruise Line, of any gratuity or tip compensation as wages under any circumstances. In the event a Seafarer who may receive tips by virtue of his/her position works under this Agreement during a period when the ship is out of regular service for any reason, such as in dry-dock, during a trans-oceanic crossing or involved in inaugural functions, or the Seafarer is working but is not aboard ship, he/she is to be paid at the rate of $ **N/A**      for each week of work. All provisions of sub-paragraph 3.(b) above, except those contained in the first sentence, will still apply with full force and effect.

(e) If Seafarer becomes ill or injured, his/her entitlement to un-earned wages shall extend only to the end of the voyage from which Seafarer signs off articles.

(f) Vacation pay accrues at the rate of one day's vacation pay for every 11 days actually worked by Seafarer. It is understood and agreed vacation pay does not accrue on extra overtime.

4. Seafarer agrees and acknowledges he/she is required to comply with and abide, at all times, ship's articles; all rules, regulations and standards set forth in the Manual (a current copy of which is attached hereto and made a part hereof); as well as, all other oral and written rules, regulations and standards of Cruise Line and of the vessel to which he/she is assigned.

5. On arrival to work, Seafarer may be required to deposit with Cruise Line U.S. money in an amount to be determined by Cruise Line equal to the cost of an open return ticket from the home port of the vessel to which he/she is assigned to his/her country of origin, or, such a ticket itself valid for one year with no restrictions.

6. This Seafarer's Agreement and Ship's Articles, is the sole and entire agreement of the parties. There are no prior or present agreements, representations or understandings, oral or written, which are binding upon either party, unless expressly included in this Seafarer's Agreement. No modification or change of this Seafarer's Agreement shall be valid or binding upon the parties unless in writing and executed by the party or parties intended to be bound by it.

7. The terms and conditions of this Seafarer's Agreement are severable. If any clause of this contract is determined to be void or otherwise unenforceable by any court or tribunal of competent jurisdiction, then the remainder of this Agreement shall stand in full force and effect.

*The undersigned Seafarer has read, understands and accepts the terms and conditions of employment as contained and incorporated herein. Thus, the Application for employment having been accepted by Cruise Line and the terms and conditions of employment having been agreed by and between both the Seafarer and Cruise Line, the undersigned hereby enter into this Seafarer's Agreement this* _____

| | |
|---|---|
| Seafarer | By: |
| **ATUL SURYAKANT KANADE** | Representative, Cruise Line |

Version 12/95.

# SEAFARER'S AGREEMENT

The Application having been submitted by "Seafarer" to Carnival Corporation ("Cruise Line"), or its manning agent, and Cruise Line or its manning agent having considered said Application, this Seafarer's Agreement is hereby entered by and between Cruise Line and "Seafarer," pursuant to the following terms and conditions:

1. The Seafarer, **ATUL SURYAKANT KANADE, CREW # 229869**

agrees to work in the position of **COOK**

aboard a ship within the fleet of the Cruise Line.

2. This Seafarer's Agreement shall be effective from the date of execution and in no circumstance shall the term exceed 10 calendar months. Notwithstanding any other provision contained herein, this Seafarer's Agreement is terminable immediately at the will of either Cruise Line or the Seafarer upon delivery of written notice of termination. If Seafarer elects to terminate, written notice shall be delivered by hand to his or her immediate supervisor. If Cruise Line elects to terminate, written notice shall be delivered by hand directly to Seafarer, unless Seafarer is not aboard ship, in which event, notice may be sent by mail to Seafarer's last known address or otherwise hand-delivered to Seafarer.

3. (a) Seafarer's right to receive any wage is conditioned upon his or her actual signing of Ship's Articles which shall be for voyages prescribed in the ship's log.

(b) Seafarer shall be paid the wage of $     **201.9234**     (U.S.) for each week of work, including overtime. (This equates to an approximate daily rate of $     **28.8462**     U.S.) A week of work is always calculated from Sunday to Saturday, consisting of 42 hours base time and 28 hours overtime, whether overtime is worked or not worked.

(c) This sub-paragraph 3.(c) does not apply to any Seafarer who may receive gratuities or tips from passengers or other Seafarers. Subject to this exception, extra overtime is time worked in excess of 70 hours per week according to Cruise Line's records. Seafarer shall be paid $     **3.8831**     (U.S.) per hour for extra overtime worked, but it is understood and agreed Seafarer has no entitlement or right to work or to be assigned to work extra overtime, which is assigned at the discretion of Cruise Line on an "as needed" basis.

(d) Cruise Line makes no promise, guarantee or commitment, and Seafarer agrees he/she does not expect or anticipate payment by Cruise Line, of any gratuity or tip compensation as wages under any circumstances. In the event a Seafarer who may receive tips by virtue of his/her position works under this Agreement during a period when the ship is out of regular service for any reason, such as in dry-dock, during a trans-oceanic crossing or involved in inaugural functions, or the Seafarer is working but is not aboard ship, he/she is to be paid at the rate of $ **N/A**     for each week of work. All provisions of sub-paragraph 3.(b) above, except those contained in the first sentence, will still apply with full force and effect.

(e) If Seafarer becomes ill or injured, his/her entitlement to un-earned wages shall extend only to the end of the voyage from which Seafarer signs off articles.

(f) Vacation pay accrues at the rate of one day's vacation pay for every 11 days actually worked by Seafarer. It is understood and agreed vacation pay does not accrue on extra overtime.

4. Seafarer agrees and acknowledges he/she is required to comply with and abide, at all times, ship's articles; all rules, regulations and standards set forth in the Manual (a current copy of which is attached hereto and made a part hereof); as well as, all other oral and written rules, regulations and standards of Cruise Line and of the vessel to which he/she is assigned.

5. On arrival to work, Seafarer may be required to deposit with Cruise Line U.S. money in an amount to be determined by Cruise Line equal to the cost of an open return ticket from the home port of the vessel to which he/she is assigned to his/her country of origin, or, such a ticket itself valid for one year with no restrictions.

6. This Seafarer's Agreement and Ship's Articles, is the sole and entire agreement of the parties. There are no prior or present agreements, representations or understandings, oral or written, which are binding upon either party, unless expressly included in this Seafarer's Agreement. No modification or change of this Seafarer's Agreement shall be valid or binding upon the parties unless in writing and executed by the party or parties intended to be bound by it.

7. The terms and conditions of this Seafarer's Agreement are severable. If any clause of this contract is determined to be void or otherwise unenforceable by any court or tribunal of competent jurisdiction, then the remainder of this Agreement shall stand in full force and effect.

*The undersigned Seafarer has read, understands and accepts the terms and conditions of employment as contained and incorporated herein. Thus, the Application for employment having been accepted by Cruise Line and the terms and conditions of employment having been agreed by and between both the Seafarer and Cruise Line, the undersigned hereby enter into this Seafarer's Agreement this _____ day of _____,*

| | |
|---|---|
| _____ | By: _____ |
| Seafarer | Representative, Cruise Line |
| **ATUL SURYAKANT KANADE** | |

Version 12/95.

# SEAFARER'S AGREEMENT

The Application having been submitted by "Seafarer" to Carnival Corporation ("Cruise Line"), or its manning agent, and Cruise Line or its manning agent having considered said Application, this Seafarer's Agreement is hereby entered by and between Cruise Line and "Seafarer," pursuant to the following terms and conditions:

1. The Seafarer, **ATUL SURYAKANT KANADE, CREW # 229869**

agrees to work in the position of **COOK**

aboard a ship within the fleet of the Cruise Line.

2. This Seafarer's Agreement shall be effective from the date of execution and in no circumstance shall the term exceed 10 calendar months. Notwithstanding any other provision contained herein, this Seafarer's Agreement is terminable immediately at the will of either Cruise Line or the Seafarer upon delivery of written notice of termination. If Seafarer elects to terminate, written notice shall be delivered by hand to his or her immediate supervisor. If Cruise Line elects to terminate, written notice shall be delivered by hand directly to Seafarer, unless Seafarer is not aboard ship, in which event, notice may be sent by mail to Seafarer's last known address or otherwise hand-delivered to Seafarer.

3. (a) Seafarer's right to receive any wage is conditioned upon his or her actual signing of Ship's Articles which shall be for voyages prescribed in the ship's log.

(b) Seafarer shall be paid the wage of $ **201.9234** (U.S.) for each week of work, including overtime. (This equates to an approximate daily rate of $ **28.8462** U.S.) A week of work is always calculated from Sunday to Saturday, consisting of 42 hours base time and 28 hours overtime, whether overtime is worked or not worked.

(c) This sub-paragraph 3.(c) does not apply to any Seafarer who may receive gratuities or tips from passengers or other Seafarers. Subject to this exception, extra overtime is time worked in excess of 70 hours per week according to Cruise Line's records. Seafarer shall be paid $ **3.8831** (U.S.) per hour for extra overtime worked, but it is understood and agreed Seafarer has no entitlement or right to work or to be assigned to work extra overtime, which is assigned at the discretion of Cruise Line on an "as needed" basis.

(d) Cruise Line makes no promise, guarantee or commitment, and Seafarer agrees he/she does not expect or anticipate payment by Cruise Line, of any gratuity or tip compensation as wages under any circumstances. In the event a Seafarer who may receive tips by virtue of his/her position works under this Agreement during a period when the ship is out of regular service for any reason, such as in dry-dock, during a trans-oceanic crossing or involved in inaugural functions, or the Seafarer is working but is not aboard ship, he/she is to be paid at the rate of $ **N/A** for each week of work. All provisions of sub-paragraph 3.(b) above, except those contained in the first sentence, will still apply with full force and effect.

(e) If Seafarer becomes ill or injured, his/her entitlement to un-earned wages shall extend only to the end of the voyage from which Seafarer signs off articles.

(f) Vacation pay accrues at the rate of one day's vacation pay for every 11 days actually worked by Seafarer. It is understood and agreed vacation pay does not accrue on extra overtime.

4. Seafarer agrees and acknowledges he/she is required to comply with and abide, at all times, ship's articles; all rules, regulations and standards set forth in the Manual (a current copy of which is attached hereto and made a part hereof); as well as, all other oral and written rules, regulations and standards of Cruise Line and of the vessel to which he/she is assigned.

5. On arrival to work, Seafarer may be required to deposit with Cruise Line U.S. money in an amount to be determined by Cruise Line equal to the cost of an open return ticket from the home port of the vessel to which he/she is assigned to his/her country of origin, or, such a ticket itself valid for one year with no restrictions.

6. This Seafarer's Agreement and Ship's Articles, is the sole and entire agreement of the parties. There are no prior or present agreements, representations or understandings, oral or written, which are binding upon either party, unless expressly included in this Seafarer's Agreement. No modification or change of this Seafarer's Agreement shall be valid or binding upon the parties unless in writing and executed by the party or parties intended to be bound by it.

7. The terms and conditions of this Seafarer's Agreement are severable. If any clause of this contract is determined to be void or otherwise unenforceable by any court or tribunal of competent jurisdiction, then the remainder of this Agreement shall stand in full force and effect.

*The undersigned Seafarer has read, understands and accepts the terms and conditions of employment as contained and incorporated herein. Thus, the Application for employment having been accepted by Cruise Line and the terms and conditions of employment having been agreed by and between both the Seafarer and Cruise Line, the undersigned hereby enter into this Seafarer's Agreement this _____ day of _____*

_____
Seafarer
**ATUL SURYAKANT KANADE**

By:_____
Representative, Cruise Line

Version 12/95.

# SEAFARER'S AGREEMENT

The Application having been submitted by "Seafarer" to Carnival Corporation ("Cruise Line"), or its manning agent, and Cruise Line or its manning agent having considered said Application, this Seafarer's Agreement is hereby entered by and between Cruise Line and "Seafarer," pursuant to the following terms and conditions:

1. The Seafarer, **ATUL SURYAKANT KANADE, CREW # 229869**

agrees to work in the position of **DEMI CHEF DE PARTIE**

aboard a ship within the fleet of the Cruise Line.

2. This Seafarer's Agreement shall be effective from the date of execution and in no circumstance shall the term exceed 10 calendar months. Notwithstanding any other provision contained herein, this Seafarer's Agreement is terminable immediately at the will of either Cruise Line or the Seafarer upon delivery of written notice of termination. If Seafarer elects to terminate, written notice shall be delivered by hand to his or her immediate supervisor. If Cruise Line elects to terminate, written notice shall be delivered by hand directly to Seafarer, unless Seafarer is not aboard ship, in which event, notice may be sent by mail to Seafarer's last known address or otherwise hand-delivered to Seafarer.

3. (a) Seafarer's right to receive any wage is conditioned upon his or her actual signing of Ship's Articles which shall be for voyages prescribed in the ship's log.

(b) Seafarer shall be paid the wage of $     207.6921     (U.S.) for each week of work, including overtime. (This equates to an approximate daily rate of $     29.6703     U.S.) A week of work is always calculated from Sunday to Saturday, consisting of 42 hours base time and 28 hours overtime, whether overtime is worked or not worked.

(c) This sub-paragraph 3.(c) does not apply to any Seafarer who may receive gratuities or tips from passengers or other Seafarers. Subject to this exception, extra overtime is time worked in excess of 70 hours per week according to Cruise Line's records. Seafarer shall be paid $     3.9941     (U.S.) per hour for extra overtime worked, but it is understood and agreed Seafarer has no entitlement or right to work or to be assigned to work extra overtime, which is assigned at the discretion of Cruise Line on an "as needed" basis.

(d) Cruise Line makes no promise, guarantee or commitment, and Seafarer agrees he/she does not expect or anticipate payment by Cruise Line, of any gratuity or tip compensation as wages under any circumstances. In the event a Seafarer who may receive tips by virtue of his/her position works under this Agreement during a period when the ship is out of regular service for any reason, such as in dry-dock, during a trans-oceanic crossing or involved in inaugural functions, or the Seafarer is working but is not aboard ship, he/she is to be paid at the rate of $   N/A     for each week of work. All provisions of sub-paragraph 3.(b) above, except those contained in the first sentence, will still apply with full force and effect.

(e) If Seafarer becomes ill or injured, his/her entitlement to un-earned wages shall extend only to the end of the voyage from which Seafarer signs off articles.

(f) Vacation pay accrues at the rate of one day's vacation pay for every 11 days actually worked by Seafarer. It is understood and agreed vacation pay does not accrue on extra overtime.

4.  Seafarer agrees and acknowledges he/she is required to comply with and abide, at all times, ship's articles; all rules, regulations and standards set forth in the Manual (a current copy of which is attached hereto and made a part hereof); as well as, all other oral and written rules, regulations and standards of Cruise Line and of the vessel to which he/she is assigned.

5.  On arrival to work, Seafarer may be required to deposit with Cruise Line U.S. money in an amount to be determined by Cruise Line equal to the cost of an open return ticket from the home port of the vessel to which he/she is assigned to his/her country of origin, or, such a ticket itself valid for one year with no restrictions.

6.  This Seafarer's Agreement and Ship's Articles, is the sole and entire agreement of the parties. There are no prior or present agreements, representations or understandings, oral or written, which are binding upon either party, unless expressly included in this Seafarer's Agreement. No modification or change of this Seafarer's Agreement shall be valid or binding upon the parties unless in writing and executed by the party or parties intended to be bound by it.

7.  The terms and conditions of this Seafarer's Agreement are severable. If any clause of this contract is determined to be void or otherwise unenforceable by any court or tribunal of competent jurisdiction, then the remainder of this Agreement shall stand in full force and effect.

*The undersigned Seafarer has read, understands and accepts the terms and conditions of employment as contained and incorporated herein. Thus, the Application for employment having been accepted by Cruise Line and the terms and conditions of employment having been agreed by and between both the Seafarer and Cruise Line, the undersigned hereby enter into this Seafarer's Agreement this* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

| | |
|---|---|
| _____ | By: _____ |
| Seafarer | Representative, Cruise Line |
| **ATUL SURYAKANT KANADE** | |

Version 12/95.

# SEAFARER'S AGREEMENT

The Application having been submitted by "Seafarer" to Carnival Corporation ("Cruise Line"), or its manning agent, and Cruise Line or its manning agent having considered said Application, this Seafarer's Agreement is hereby entered by and between Cruise Line and "Seafarer," pursuant to the following terms and conditions:

1. The Seafarer, **ATUL SURYAKANT KANADE, CREW # 229869**

agrees to work in the position of **COOK**

aboard a ship within the fleet of the Cruise Line.

2. This Seafarer's Agreement shall be effective from the date of execution and in no circumstance shall the term exceed 10 calendar months. Notwithstanding any other provision contained herein, this Seafarer's Agreement is terminable immediately at the will of either Cruise Line or the Seafarer upon delivery of written notice of termination. If Seafarer elects to terminate, written notice shall be delivered by hand to his or her immediate supervisor. If Cruise Line elects to terminate, written notice shall be delivered by hand directly to Seafarer, unless Seafarer is not aboard ship, in which event, notice may be sent by mail to Seafarer's last known address or otherwise hand-delivered to Seafarer.

3. (a) Seafarer's right to receive any wage is conditioned upon his or her actual signing of Ship's Articles which shall be for voyages prescribed in the ship's log.

(b) Seafarer shall be paid the wage of $     196.1540     (U.S.) for each week of work, including overtime. (This equates to an approximate daily rate of $     28.0220     U.S.) A week of work is always calculated from Sunday to Saturday, consisting of 42 hours base time and 28 hours overtime, whether overtime is worked or not worked.

(c) This sub-paragraph 3.(c) does not apply to any Seafarer who may receive gratuities or tips from passengers or other Seafarers. Subject to this exception, extra overtime is time worked in excess of 70 hours per week according to Cruise Line's records. Seafarer shall be paid $     3.7722     (U.S.) per hour for extra overtime worked, but it is understood and agreed Seafarer has no entitlement or right to work or to be assigned to work extra overtime, which is assigned at the discretion of Cruise Line on an "as needed" basis.

(d) Cruise Line makes no promise, guarantee or commitment, and Seafarer agrees he/she does not expect or anticipate payment by Cruise Line, of any gratuity or tip compensation as wages under any circumstances. In the event a Seafarer who may receive tips by virtue of his/her position works under this Agreement during a period when the ship is out of regular service for any reason, such as in dry-dock, during a trans-oceanic crossing or involved in inaugural functions, or the Seafarer is working but is not aboard ship, he/she is to be paid at the rate of $ N/A     for each week of work. All provisions of sub-paragraph 3.(b) above, except those contained in the first sentence, will still apply with full force and effect.

(e) If Seafarer becomes ill or injured, his/her entitlement to un-earned wages shall extend only to the end of the voyage from which Seafarer signs off articles.

(f) Vacation pay accrues at the rate of one day's vacation pay for every 11 days actually worked by Seafarer. It is understood and agreed vacation pay does not accrue on extra overtime.

4. Seafarer agrees and acknowledges he/she is required to comply with and abide, at all times, ship's articles; all rules, regulations and standards set forth in the Manual (a current copy of which is attached hereto and made a part hereof); as well as, all other oral and written rules, regulations and standards of Cruise Line and of the vessel to which he/she is assigned.

5. On arrival to work, Seafarer may be required to deposit with Cruise Line U.S. money in an amount to be determined by Cruise Line equal to the cost of an open return ticket from the home port of the vessel to which he/she is assigned to his/her country of origin, or, such a ticket itself valid for one year with no restrictions.

6. This Seafarer's Agreement and Ship's Articles, is the sole and entire agreement of the parties. There are no prior or present agreements, representations or understandings, oral or written, which are binding upon either party, unless expressly included in this Seafarer's Agreement. No modification or change of this Seafarer's Agreement shall be valid or binding upon the parties unless in writing and executed by the party or parties intended to be bound by it.

7. The terms and conditions of this Seafarer's Agreement are severable. If any clause of this contract is determined to be void or otherwise unenforceable by any court or tribunal of competent jurisdiction, then the remainder of this Agreement shall stand in full force and effect.

*The undersigned Seafarer has read, understands and accepts the terms and conditions of employment as contained and incorporated herein. Thus, the Application for employment having been accepted by Cruise Line and the terms and conditions of employment having been agreed by and between both the Seafarer and Cruise Line, the undersigned hereby enter into this Seafarer's Agreement this _____ day of _____ _____.*

_____
Seafarer
**ATUL SURYAKANT KANADE**

By: _____
Representative, Cruise Line

Version 12/95.

# SEAFARER'S AGREEMENT

The Application having been submitted by "Seafarer" to Carnival Corporation ("Cruise Line"), or its manning agent, and Cruise Line or its manning agent having considered said Application, this Seafarer's Agreement is hereby entered by and between Cruise Line and "Seafarer," pursuant to the following terms and conditions:

1. The Seafarer, **ATUL S KANADA,   CREW # 229869**

agrees to work in the position of **ASST COOK**

aboard a ship within the fleet of the Cruise Line.

2. This Seafarer's Agreement shall be effective from the date of execution and in no circumstance shall the term exceed 10 calendar months. Notwithstanding any other provision contained herein, this Seafarer's Agreement is terminable immediately at the will of either Cruise Line or the Seafarer upon delivery of written notice of termination. If Seafarer elects to terminate, written notice shall be delivered by hand to his or her immediate supervisor. If Cruise Line elects to terminate, written notice shall be delivered by hand directly to Seafarer, unless Seafarer is not aboard ship, in which event, notice may be sent by mail to Seafarer's last known address or otherwise hand-delivered to Seafarer.

3. (a) Seafarer's right to receive any wage is conditioned upon his or her actual signing of Ship's Articles which shall be for voyages prescribed in the ship's log.

(b) Seafarer shall be paid the wage of $      **115.3845**      (U.S.) for each week of work, including overtime. (This equates to an approximate daily rate of $      **16.4835**      U.S.) A week of work is always calculated from Sunday to Saturday, consisting of 42 hours base time and 28 hours overtime, whether overtime is worked or not worked.

(c) This sub-paragraph 3.(c) does not apply to any Seafarer who may receive gratuities or tips from passengers or other Seafarers. Subject to this exception, extra overtime is time worked in excess of 70 hours per week according to Cruise Line's records. Seafarer shall be paid $      **2.2189**      (U.S.) per hour for extra overtime worked, but it is understood and agreed Seafarer has no entitlement or right to work or to be assigned to work extra overtime, which is assigned at the discretion of Cruise Line on an "as needed" basis.

(d) Cruise Line makes no promise, guarantee or commitment, and Seafarer agrees he/she does not expect or anticipate payment by Cruise Line, of any gratuity or tip compensation as wages under any circumstances. In the event a Seafarer who may receive tips by virtue of his/her position works under this Agreement during a period when the ship is out of regular service for any reason, such as in dry-dock, during a trans-oceanic crossing or involved in inaugural functions, or the Seafarer is working but is not aboard ship, he/she is to be paid at the rate of $   **N/A**      for each week of work. All provisions of sub-paragraph 3.(b) above, except those contained in the first sentence, will still apply with full force and effect.

(e) If Seafarer becomes ill or injured, his/her entitlement to un-earned wages shall extend only to the end of the voyage from which Seafarer signs off articles.

(f) Vacation pay accrues at the rate of one day's vacation pay for every 11 days actually worked by Seafarer. It is understood and agreed vacation pay does not accrue on extra overtime.

4.   Seafarer agrees and acknowledges he/she is required to comply with and abide, at all times, ship's articles; all rules, regulations and standards set forth in the Manual (a current copy of which is attached hereto and made a part hereof); as well as, all other oral and written rules, regulations and standards of Cruise Line and of the vessel to which he/she is assigned.

5.   On arrival to work, Seafarer may be required to deposit with Cruise Line U.S. money in an amount to be determined by Cruise Line equal to the cost of an open return ticket from the home port of the vessel to which he/she is assigned to his/her country of origin, or, such a ticket itself valid for one year with no restrictions.

6.   This Seafarer's Agreement and Ship's Articles, is the sole and entire agreement of the parties. There are no prior or present agreements, representations or understandings, oral or written, which are binding upon either party, unless expressly included in this Seafarer's Agreement. No modification or change of this Seafarer's Agreement shall be valid or binding upon the parties unless in writing and executed by the party or parties intended to be bound by it.

7.   The terms and conditions of this Seafarer's Agreement are severable. If any clause of this contract is determined to be void or otherwise unenforceable by any court or tribunal of competent jurisdiction, then the remainder of this Agreement shall stand in full force and effect.

*The undersigned Seafarer has read, understands and accepts the terms and conditions of employment as contained and incorporated herein. Thus, the Application for employment having been accepted by Cruise Line and the terms and conditions of employment having been agreed by and between both the Seafarer and Cruise Line, the undersigned hereby enter into this Seafarer's Agreement this* ___12___ *day of* ___Ocat_____, *19___*

_____

Seafarer

**ATUL S KANADA**

By: _____

Representative, Cruise Line

Version 12/95.

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

05-22968

CIV-SEITZ

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Roxana Maria Borcea, Cipran Ciuraru, Tihomir Danchev, Atul Kanade, individually, and on behalf of all others similarly situated,

KLEIN

## DEFENDANTS

Carnival Corporation d/b/a Carnival Cruise Lines, Inc.

**(b)** County of Residence of First Listed Plaintiff    abroad
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Miami-Dade

(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Thomas A. Tucker Ronzetti, Esq.,
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134

Attorneys (If Known)

Marty Steinberg, Esq.
Hunton & Williams
1111 Brickell Avenue, Suite 2500

**(d)** Check County Where Action Arose: ☒ DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

Dade1:05CV22968/JAL/Klein

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☒ 120 Marine | ☐ 310 Airplane  **PERSONAL INJURY** | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability  ☐ 362 Personal Injury - Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander  ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability  ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 340 Marine  **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 480 Consumer Credit |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability  ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 490 Cable Sat TV |
| | ☐ 350 Motor Vehicle  ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability  ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury  ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting  ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment  **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations  ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare  ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment  ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other  ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights  ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity)

Seaman's Wage Act

LENGTH OF TRIAL via  10  days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  More than $5 million

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____    DOCKET NUMBER _____

DATE  11/16/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____

$250.00   930537
11/16/05